IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAP GENE PARKER, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-1832-M |
| | § | |
| PLUMBERS AND PIPEFITTERS | § | |
| NATIONAL PENSION FUND, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff's Motion for Summary Judgment [Docket Entry #23], Defendant's Cross-Motion for Summary Judgment [Docket Entry #24], and Plaintiff's Motion and Supplemental Motion to Exclude Evidence [Docket Entries #28 & 31]. For the reasons explained below, Defendant's Cross-Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motions are **DENIED**.

**I. BACKGROUND AND PROCEDURAL HISTORY**

From January 1967 to December 1980, Dap Gene Parker worked for various employers who participated in the Pipefitters Local 211 Pension Fund ("Local 211 Pension Fund") and thus made pension contributions to this Fund on his behalf. From 1996 forward, Parker worked for employers who made contributions on his behalf only to the Defendant Plumbers and Pipefitters National Pension Fund ("National Pension Fund"). In May of 1990, the Local 211 Pension Fund merged into the National Pension Fund.

A. **Losses in Service**

Under the terms of Local 211 Pension Fund's Plan in effect during various dates at the beginning of his employment,[1] Parker was entitled to pension benefits when he had at least ten years of "Credited Service."[2] Parker earned a year of Credited Service in any calendar year in which he worked in Covered Employment[3] for 1200 or more hours. If Parker worked fewer than 1200 hours, he would receive fractional credits for the number of hours he worked; however, if he worked fewer than 400 hours, he would earn no Credited Service. If he worked more than 1200 hours, then the hours in excess of 1200 (up to 1200) would accumulate in Parker's "Hour Bank," which could then be credited in any succeeding year when he worked less than 1200 hours, to bring the Credited Service hours up to 1200 hours so he could earn a year of Credited Service.

From 1967 to 1987, Parker worked the following hours and earned Credited Service as indicated under Local 211 Pension Fund's Plan:[4]

| Year | Hours Worked | Hours Counted Toward Credited Service (Worked Hours + Banked Hours, if needed) (up to 1200) | Cumulative Hours Banked (up to 1200) | Credited Service | Total Credited Service |
|------|--------------|---------------------------------------------------------------------------------------------|--------------------------------------|------------------|------------------------|
| 1967 | 1272 | 1200 | 72 | 1 | 1 |
| 1968 | 1343 | 1200 | 215 | 1 | 2 |

---

[1] The Local 211 Pension Fund amended its pension plans several times since 1963, sometimes to satisfy requirements of the Employee Retirement Income Security Act ("ERISA"). The changes relevant here are the "Loss of Service" rules.
[2] Under Local 211 Pension Fund's 1972 Plan, Credited Service means the sum of "Past Service" and "Future Service." Past Service credit is awarded for a year of employment worked prior to September 22, 1963. Def.'s App. 15. Future Service credit is awarded for a year of employment during which the employee worked in Covered Employment for 1200 or more hours. *Id.* Because Parker's first year of work was 1967, only the Future Service credit applies.
[3] "Covered Employment" is defined as work covered by the plan or collective bargaining agreement requiring contributions to be paid to the Local 211 Pension Fund. Def.'s App. 25, 45, 81.
[4] Def.'s App. 335.

| | | | | | |
|---|---|---|---|---|---|
| 1969 | 730 | 945 | 0 | .79 | 2.79 |
| 1970 | 1629.75 | 1200 | 429.75 | 1 | 3.79 |
| 1971 | 0 | 429.75 | 0 | .36 | 4.15 |
| 1972 | 0 | 0 | 0 | 0 | 4.15 |
| 1973 | 0 | 0 | 0 | 0 | 0 |
| 1974 | 1409.5 | 1200 | 209.50 | 1 | 1 |
| 1975 | 1946.1 | 1200 | 955.60 | 1 | 2 |
| 1976 | 1555.12 | 1200 | 1200 | 1 | 3 |
| 1977 | 1753 | 1200 | 1200 | 1 | 4 |
| 1978 | 1415.54 | 1200 | 1200 | 1 | 5 |
| 1979 | 1163 | 1200 | 1163 | 1 | 6 |
| 1980 | 108 | 1200 | 71 | 1 | 7 |
| 1981 | 0 | 0 | 0 | 0 | 7 |
| 1982 | 0 | 0 | 0 | 0 | 7 |
| 1983 | 0 | 0 | 0 | 0 | 7 |
| 1984 | 0 | 0 | 0 | 0 | 7 |
| 1985 | 0 | 0 | 0 | 0 | 7 |
| 1986 | 0 | 0 | 0 | 0 | 7 |
| 1987 | 0 | 0 | 0 | 0 | 7 |

Under the 1972 Plan's provision for "Loss of Credited Service," if Parker had less than 10 years of Credited Service, and after application of hours in his Hour Bank, he had less than 400 hours of work for two successive calendar years, he would lose all of his accrued Credited Service. From 1972 to 1973, Parker worked no hours and had insufficient Hour Bank hours to get above 400 hours of Covered Employment. Because Parker had less than 10 years of Credited Service, he therefore lost his accrued Credited Service for 1967 to 1971 ("First Loss of Service").

The 1976 Plan changed the "Loss of Service" terms. Under that Plan, once Parker accumulated at least 8 years of "Qualifying Service," he would never lose his "Qualifying Service" and "Benefit Service."[5] If Parker accumulated less than 8 years of Qualifying Service, he would lose all of his Benefit Service if, on or after December 31, 1976, he had a number of consecutive years of "Break-In-Service" after 1974 equal to or more than the total number of his years he had of Qualifying Service before the Break-In-Service.[6] Break-In-Service is any year during which an employee is credited with less than 400 hours of Covered Employment.[7]

In 1984, the Plan was modified due to amendments to ERISA. With regard to Parker's benefit calculation, only the "Loss of Service" rules changed:

> An Employee who has accumulated at least 8 years of Qualifying Service shall never lose his Qualifying Service and Benefit Service. An Employee who has accumulated less than 8 years of Qualifying Service shall lose all of his Qualifying Service and Benefit Service if (i) on or after December 31, 1976 and prior to January 1, 1985, he has had a number of consecutive calendar years of Break-In-Service after 1974 equal to or exceeding the aggregate number of his years of Qualifying Service prior to such Break-In-Service (such as 3 consecutive calendar years of Break-In-Service after only 2.75 years of Qualifying Service), or if (ii) on or after January 1, 1985, he has had a number of consecutive calendar years of Break-In-Service equal to or exceeding the greater of (a) five, or (b) the aggregate number of his years of Qualifying Service prior to such Break-In-Service, and he shall thereupon cease to be an Employee under this Plan; any such person who subsequently returns to work in Covered Employment shall be treated as a new Employee under this Plan, as though he had not previously worked in Covered Employment. Qualifying Service and Benefit Service prior to January 1, 1977, shall be determined under the provisions of the Plan as in effect on the date the Service was performed.

After 1974, Parker had seven years of Qualifying Service and seven years of Break-In-Service. Under the terms of the 1976 Plan, Parker did not have 8 years of Qualifying Service,

---

[5] Def.'s App. 51. Under the terms of Local 211 Pension Fund's 1976 Plan, the definition of Credited Service included Past Service and Benefit Service. One Benefit Service credit is given for each year of employment in which the employee works in Covered Employment for 1,200 or more hours. One Qualifying Service credit is awarded for a year of employment in which the employee works in Covered Employment for 1,000 or more hours. Because in each year Parker worked over 1,000 hours he also worked over 1,200, the difference in Qualifying Service and Benefit Service is irrelevant.
[6] *Id.*
[7] Def.'s App. 50.

and, because he had an equal number of years of Qualifying Service and Break-In-Service, Parker lost his Credited Service for 1974 to 1980.

If the 1984 Plan applied, under (ii), Parker's seven years of Qualifying Service equaled his Break-In-Service, resulting in a loss of Qualifying Service. Therefore, under the terms of either the 1976 or 1984 Plans, Parker incurred another loss of service ("Second Loss of Service").[8]

### B. Merger

Effective May 12, 1990, Local 211 Pension Fund merged into the National Pension Fund, which acquired Local 211 Pension Fund's assets and agreed to administer and pay the benefits owed by the Local 211 Pension Fund. According to the Agreement and Plan of Integration between National Pension Fund and Local 211 Pension Fund ("Merger Agreement"), any "Local 211 Covered Employee" who does not have a minimum of two-tenths of a year of Credited Service in any one of the five consecutive years immediately preceding May 12, 1990, will have his prior pension amounts determined only under the Local 211 Pension Plan.[9] "Local 211 Covered Employee" means any person who, before 1990, had not lost all of his Qualifying Service and Benefit Service under the 1984 Plan.[10] If "such an Employee" returns after 1990 to employment covered by the National Pension Fund Plan, but before incurring a "Permanent Break in Service," as defined in Section 5.06 of the National Pension Fund Plan,[11] he may accrue additional benefits under the National Pension Fund Plan.[12] However, because Parker incurred the First and Second Losses of Service, he did not qualify as a Local 211 Covered Employee

---

[8] Defendant contends that both Plans apply. *See* Def's Reply in Supp. of Cross Mot. for Summ. J. 3. Regardless of which Plan applies from 1974 to 1987, Parker incurred a loss of service.
[9] Def.'s App. 183.
[10] Def.'s App. 180.
[11] The National Pension Fund Plan uses different terms, including "Permanent Break in Service," which essentially, for purpose of this Opinion, means the same as "Loss of Service," as defined in the Local 211 Plan.
[12] Def.'s App. 183-84.

under the Merger Agreement.

### C. 1996 to 2008

In February 1996, Parker returned to work, and his employer made contributions to the National Pension Fund on his behalf. Parker received Annual Statements of Contributions from the National Pension Fund, which identified the number of hours he worked each year and stated that he had no service credits prior to 1996.[13]

On December 12, 2007, Parker inquired about the status of his credited service.[14] In about December 2007, National Pension Fund revised its pension plan, which impacts Parker's pension calculation for 1996 to 2008. On March 12, 2008, the National Pension Fund responded to Parker's inquiry, stating that under the Local 211 Pension Plans, Parker had lost his Credited Service from 1967 to 1981 due to two Breaks-In-Service, but that under the 2007 National Pension Fund Plan, he had 10.8 years of Credited Service for work performed between 1996 and 2008.[15]

On March 31, 2008, Parker applied for pension benefits and sent a letter explaining that his Break-In-Service from 1971 to 1973 was "beyond [his] control," claiming he had been terminated based on his "religious conviction and belief,"[16] and that he had filed a class action claim against his employer, alleging religious discrimination.[17] After federal mediation, Parker claims his employer (who he identified as Southwest Fabrication, an employer who, according to the administrative record, was not his employer at that time) rehired him, beginning in 1971.[18] In his letter to the National Pension Fund, Parker requested that his loss of credited service in

---

[13] *E.g.*, Def.'s App. 349-52.
[14] Def.'s App. 365.
[15] Def.'s App. 412-14.
[16] Def.'s App. 415-16.
[17] *Id.*
[18] *Id.*

1973 be reconsidered based on those circumstances.[19]

On May 1, 2008, the National Pension Fund responded to Parker's letter, stating that it acknowledged the letter as an appeal of the determination that Parker suffered a Break-In-Service in 1973 and allowed Parker to submit further information to the National Pension Fund's Appeal Committee.[20] On May 5, 2008, the National Pension Fund wrote Parker, stating it had no records of Parker's alleged lawsuit and requested a copy of the settlement papers, the ruling, and other documents related to the alleged discrimination case.[21] On June 5, 2008, Parker's counsel responded, but provided no documents, and argued that the Break-In-Service in 1973 and from 1980 to 1996 should be waived under Section 5.06(h)(vii) of the 2007 National Pension Fund Plan.[22]

Section 5.06(h)(vii) of the 2007 Plan provides:

A person's most recent Permanent Break in Service will be waived if he returns to Covered Employment and thereafter accumulates, prior to incurring another Permanent Break in Service, five years of Vesting Service or five years of Future Service Credit including one Hour of Work on or after January 1, 1999.[23]

### D. Decisions of Appeals Committee and Parker's Requests for Documents

In June 2008, the Appeals Committee considered and denied Parker's claims. In so concluding, the Appeals Committee determined that the Local 211 Pension Fund Plans applied to Parker prior to 1990; that under the 1972 Plan, Parker had a Permanent Break-In-Service as of 1973; and that under the 1984 Plan, Parker had a second Break-In-Service as of 1987.

On July 1, 2008, the National Pension Fund informed Parker of the Appeals Committee's decision and of his right to access the documents relevant to his application for benefits. On July

---

[19] *Id.*
[20] Def.'s App. 398.
[21] Def.'s App. 401.
[22] Def.'s App. 402-03.
[23] Def.'s App. 280.

16, 2008, Parker's counsel requested the following documents: (1) the 1972 Fund Plan, with all amendments and summary plan descriptions from 1972 to 1980; (2) the 1984 Fund Plan, with all amendments and summary plan descriptions from 1984 to 1990; and (3) the Merger Agreement between Local 211 Pension Fund and National Pension Fund.[24]  On August 25, 2008, the National Pension Fund responded, providing the requested documents in its possession.[25]

On November 24, 2008, Parker's counsel informed National Pension Fund of missing summary plan descriptions from 1972 to 1980 and 1984 to 1990, but acknowledged receipt of the remaining requested documents.[26]  Parker's counsel also reiterated he disputed the Break-In-Service in 1973 and urged that Section 5.06 of the 2007 Plan enabled Parker to additional service credits.

On December 18, 2008, National Pension Fund informed Parker's counsel that the Appeals Committee was considering Parker's November 24 "letter of appeal" and that it had provided to Parker all plan documents for the Local 211 Pension Plan that were available to it.[27]  In April 2009, the Appeals Committee affirmed the prior decision that Parker had two Breaks-In-Service and found that Section 5.06 did not apply because under the Merger Agreement, Parker was not a Local 211 Covered Employee.[28]

On September 29, 2009, Parker filed this action, alleging he is entitled to additional years of Credited Service, an administrative penalty for Defendant's failure to provide requested material, and attorney's fees.  The parties cross-move for summary judgment.

---

[24] Def.'s App. 426.
[25] Def.'s App. 6.
[26] Def.'s App. 430.
[27] Def.'s App. 437.
[28] Def.'s App. 458–464.

## II. MOTIONS TO EXCLUDE EVIDENCE

In reviewing the denial of benefits in ERISA cases, courts generally cannot consider evidence outside the administrative record.[29] Parker moves to exclude the following evidence provided by the National Pension Fund, as being outside the administrative record: (1) the last eight pages of the 1972 Plan;[30] (2) correspondence dated October 8, 2010, from National Pension Fund's counsel to Parker's counsel, providing certain documents requested by Parker,[31] which include (a) the First Amendment to the 1963 Plan,[32] (b) the Second Amendment to the 1963 Plan,[33] and (c) the Fourth Amendment to the 1963 Plan; and (3) Parker's deposition testimony, referenced by the National Pension Fund in its briefing.[34]

Parker argues that any documents provided to him after the administrative record closed could not have been available to the National Pension Fund or the plan administrator and therefore should be excluded as not being a part of the administrative record. The Court does not rely on any of the documents or deposition testimony objected to, so the Motion is DENIED as moot.

## III. MOTIONS FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

Summary judgment is warranted if the pleadings, discovery, disclosure materials, and supporting affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[35] A genuine issue of material fact exists when

---

[29] *Anderson v. Cytec Industries, Inc.,* 619 F.3d 505, 515 (5th Cir. 2010).
[30] Def.'s App. 32–39.
[31] Def.'s App. 557–58.
[32] Def.'s App. 559–72.
[33] Def.'s App. 573–575.
[34] Def.'s App. 590.
[35] Fed. R. Civ. P. 56(a).

a reasonable jury could find for the non-moving party.[36] The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.[37] Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate, by designating specific facts beyond the pleadings that prove the existence of a genuine issue of material fact.[38] In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."[39]

### B. ERISA Standard

Because the 2007 Plan vests the Trustees of the National Pension Fund with discretionary authority to determine eligibility for benefits,[40] and no conflict of interest is alleged,[41] the Court reviews the denial of benefits for an abuse of discretion.[42] In the Fifth Circuit, courts generally apply a two-step analysis to determine whether the plan administrator abused its discretion.[43] A court first determines whether the administrator's interpretation of the plan was legally correct by considering three factors: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan."[44]

---

[36] *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[37] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).
[38] *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).
[39] *Lynch Props.*, 140 F.3d at 625 (citation omitted).
[40] Def.'s App. 286, 298.
[41] *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247 (5th Cir. 2009).
[42] *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 629 (5th Cir. 2004).
[43] *See Pylant v. Hartford Life & Accident Ins. Co.*, 497 F.3d 536, 540 (5th Cir. 2007).
[44] *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008).

The most important of the three factors—the second—is whether the interpretation is consistent with a fair reading of the plan, and a court "must interpret ERISA provisions as they are likely to be 'understood by the average plan participant, consistent with the statutory language.'"[45] When determining whether a plan has been given a uniform construction, a court considers whether a plan administrator consistently applied the plan to similarly situated applicants.[46] Finally, a court gauges unanticipated costs to the plan by making "an inquiry into the plain reading of the plain language and whether a proposed alternate reading would result in costs unanticipated under the plain meaning."[47]

If a court finds that the administrator's interpretation and application of the plan is legally correct, the inquiry ends, because no abuse of discretion occurred.[48] If the administrator's interpretation of a plan was legally incorrect, a court considers three factors to determine whether the administrator abused its discretion: "(1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith."[49] The decision to deny benefits must be supported by substantial evidence and not be arbitrary and capricious.[50] Substantial evidence has been defined as "more than a scintilla, less than a preponderance," and is comprised of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[51] In contrast, a decision is arbitrary and

---

[45] *Id.* at 313-14 (internal citation omitted).
[46] *See Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-CV-0752-D, 2010 WL 2563429, at *12 (N.D. Tex. June 22, 2010) (citing *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 258 (5th Cir. 2009)).
[47] *Crowell*, 541 F.3d at 316.
[48] *UNOCAL*, 570 F.3d at 257.
[49] *High v. E-Systems Inc.*, 459 F.3d 573, 577 (5th Cir. 2006) (quoting *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 639, 637-38 (5th Cir. 1992)).
[50] *See Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397-98 (5th Cir. 2007) (quoting *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)).
[51] *Corry*, 499 F.3d at 398.

capricious if it was "made without a rational connection between the known facts and the decision or between the found facts and the evidence."[52]

Factual determinations under an ERISA plan are also reviewed for abuse of discretion.[53] "Once the administrative record has been determined, the district court may not stray from it but for certain limited exceptions, such as the admission of evidence related to how an administrator has interpreted terms of the plan in other instances. . . ."[54] Fifth Circuit precedent supports a district court's decision, when conducting an abuse of discretion review, to limit its review to those facts presented to the administrator.[55]

### C.  Trustees' Decision

Plaintiff disputes whether the Trustees gave a uniform construction or fair reading of the governing language and whether there are any unanticipated costs resulting from his proffered interpretation of the Plan. Plaintiff also maintains that because of religious discrimination, the Loss of Service provisions should not apply, and that under Section 5.06, he should receive Credited Service prior to 1981.

#### 1.  Correct Interpretation

Here, the evidence before the Court shows the Trustees have uniformly applied the relevant sections of the Plans. For instance, the Trustees consistently applied the Merger Agreement in determining that the Local 211 Pension Plan determined a former Local 211 employee's eligibility for benefits; read the Merger Agreement not to apply to those employees who were not "Covered Employees" under the Local 211 Pension Plan, including those who

---

[52] *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 828 (5th Cir. 1996).
[53] *See Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 226 (5th Cir. 2004).
[54] *Id.*
[55] *Fralick*, 2010 WL 2563429, at *5 (citing *Wildbur*, 974 F.2d at 642).

prior to 1990, lost their Qualified and Benefit Service credits; and applied the Loss of Service rules from the 1972, 1976, and 1984 Plans.[56]

The Trustees also gave a fair reading to the governing language. Parker does not dispute the credit calculations by the National Pension Fund under the terms of the relevant Plans, instead arguing the Loss of Service provisions should be ignored because of his employer's alleged discrimination. The terms of the 1972, 1976, and 1984 Plans do not vary if an employee was discriminated against. Further, the Trustees requested that Parker provide evidence of the results of the alleged discrimination, but he did not do so. The Loss of Service provision in the 1972 Plan clearly provided that because Parker indisputably worked less than 400 hours in 1972 and 1973 and had less than 10 years of Credited Service, he lost his Credited Service for the hours worked from 1967 to 1973. The 1976 and 1984 Loss of Service provisions also clearly provide that because Parker had seven consecutive years with no Covered Employment, Parker lost his Credited Service for the hours he worked from 1974 to 1980. Further, Section 5.6 of the National Pension Fund's Plan did not apply to Parker, because he was not a "Local 211 Covered Employee" having already lost Credited Service.

Therefore, the National Pension Fund was not required to pay benefits to Parker under the relevant Plans.

### 2. Abuse of Discretion

Even if the Trustees' decision had been legally incorrect, they did not abuse their discretion in rendering the interpretations they did. Parker's position, if adopted by the Trustees, would render the relevant Loss of Service provisions meaningless,[57] and the Trustees acted in good faith in making pension decisions that conformed to the applicable documents.

---

[56] Def.'s App. 476- 493, 502.
[57] *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 272 (5th Cir. 2005).

### 3. Title VII Does Not Apply

Without citing any germane authority, Parker asserts that 42 U.S.C. § 2000e-2 compels the National Pension Fund to provide him pensions for the years in which his *employer* purportedly discriminated against him when terminating him. Section 2000e-2 does not provide any basis for such claim against the Plan, and, further, Parker did not provide the Trustees with any evidence that he was subjected to unlawful discrimination or received an award or reinstatement as a result of making a claim.[58]

### D. Failure to Provide Documents

A plaintiff may also seek penalties under ERISA when a plan administrator "refuses to comply with a request for any information which such administrator is required . . . to furnish to a participant or beneficiary."[59] A plan administrator must, upon written request of the plan participant, furnish a copy of the summary, plan description, trust agreement, contract or other instruments under which the plan is operated or established.[60]

ERISA provides that an administrator who fails to provide such information "may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $110 a day from the date of such failure or refusal."[61] In making its decision, the court may take into consideration the administrator's reasons for refusing to provide information,[62] whether the claimant was prejudiced by the refusal to provide the requested information,[63] and whether the

---

[58] Plaintiff cites to *Spirt v. Teachers Ins. & Annuity Ass'n*, 691 F.2d 1054, 1062-63 (2d Cir. 1983), and *Carparts Distrib. Ctr., Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 15 (1st Cir. 1984). Neither case purports to hold a plan administrator liable for an employer's alleged discrimination. Instead, in *Spirt*, on which *Carparts* relies, the court found the benefit *plan's* sex-based mortality tables discriminatory under Title VII. 691 F.2d at 1069.
[59] 29 U.S.C. § 1132(c)(1)(B).
[60] 29 U.S.C. § 1024(b).
[61] *Id.* at § 1132(c)(1); 29 C.F.R. § 2575.502c-1.
[62] *Abraham v. Exxon Corp.*, 85 F.3d 1126, 1132 (5th Cir. 1996).
[63] *Godwin v. Sun Life. Assur. Co. of Can.*, 980 F.2d 323, 327 (5th Cir. 1992).

administration knew or should have known that particular documents had been requested in the first place.[64]

Parker claims Defendant failed to provide the requested Plan amendments before 1972 and summary plan documents from 1972 to 1980. However, in his letter to the Defendant seeking such documents, dated July 16, 2008, Plaintiff did not request amendments before 1972.[65] Further, the evidence before the Court is that National Pension Fund provided every document in its possession that Parker requested,[66] and, in determining Parker's loss of service, the National Pension Fund did not apply any Plan or amendment before 1972,[67] so their absence in the original production did not prejudice Parker.

The Court finds that the National Pension Fund acted in good faith in providing documents in its possession, and that Parker was not prejudiced by the sequence and contents of production, nor by the non-production of certain other documents. The Court thus declines to exercise its discretion under 29 U.S.C. § 1132(c)(1)(B) to impose any penalty.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment and Motions to Exclude Evidence are **DENIED**, and Defendant's Cross-Motion for Summary Judgment is **GRANTED**. The Court will enter a separate Final Judgment.

**SO ORDERED.**

August 10, 2011.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[64] *Fisher v. Metropolitan life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir. 1990).
[65] Def.'s App. 426.
[66] Def.'s App. 5.
[67] Def.'s App. 405–08, 459–64.